DAVID T. BUCKINGHAM, Plaintiff v. CYNTHIA B. BUCKINGHAM, Defendant

No. COA98-436

(Filed 6 July 1999)

**1. Judgments— consent—consent withdrawn between signed memorandum and formal judgment**

A consent judgment memo was a final judgment where it was not merely rendered in open court, but was a document which was represented by the parties as their full agreement, presented to the court, signed by the parties and the judge, and filed by the clerk of court. The directive for a "final order" was only contained in the order so that a more formal entry of judgment would be entered into the records and that second, more formal document was merely surplusage. Plaintiff's attempt to rescind his consent between the judgment memo and the formal entry of judgment was ineffectual.

**2. Child Support, Custody, and Visitation— custody—consent judgment—findings not required**

The trial court did not err by entering a consent order for child custody which contained neither findings of fact nor conclusions of law related to custody. While findings of fact and conclusions of law are clearly necessary in an adjudication of child custody, they are not necessary when a consent judgment is rendered.

**3. Appeal and Error— preservation of issues—no written order denying motion**

An assignment of error in a child custody action to the denial of motions for revision prior to final judgment and for relief from final judgment was dismissed where the record did not contain a written order denying the motions.

Appeal by plaintiff from judgment entered 20 January 1998 by Judge L. W. Payne in Wake County District Court. Heard in the Court of Appeals 24 February 1999.

*Wyrick Robbins Yates & Ponton LLP, by Robert A. Ponton, Jr. and Alexandra M. Hightower for plaintiff-appellant.*

*Gailor & Associates, P.L.L.C., by Carole S. Gailor and Kimberly A. Wallis for defendant-appellee.*

BUCKINGHAM v. BUCKINGHAM

[134 N.C. App. 82 (1999)]

HUNTER, Judge.

Plaintiff David T. Buckingham appeals the entry of a consent agreement on 14 October 1997 and final order entered 20 January 1998. The dispositive issue in this case concerns whether or not a memo of consent judgment, which has been signed by the parties and judge, and entered into the court record, is valid as a final judgment on the issue of child custody. Additionally, we will consider whether child custody consent judgments must contain findings of fact and conclusions of law.

The evidence indicates that plaintiff, David T. Buckingham, and defendant, Cynthia B. Buckingham, were married on 3 January 1993. The parties had one child during the course of their marriage, Anne Elizabeth Buckingham, who was born 7 January 1995. The parties separated on 5 November 1996, and plaintiff filed a verified complaint for divorce from bed and board and motion for custody on 6 November 1996. The parties attended mandatory mediation on the issue of custody, and it was unsuccessful. Plaintiff and defendant consented to psychiatric and psychological evaluations which were completed and reports issued prior to the trial date of 14 October 1997.

On 14 October 1997, plaintiff and defendant signed a document entitled "Memo of Consent Judgment" ("consent judgment memo") in which the parties consented to joint legal custody of the minor child, with the defendant maintaining primary physical custody. The consent judgment memo stipulated the terms of plaintiff's secondary custody of the minor child, custody of the child during holidays, religious rearing of the child, counseling and mediation regarding additional visitation of the child with plaintiff, and other miscellaneous matters. On the same day, the parties appeared before Judge L. W. Payne in Wake County District Court, and represented to him that they both consented to his signing the consent judgment memo and a final judgment which would contain identical terms and conditions. The consent judgment memo contained neither findings of fact nor conclusions of law as to the fitness of either parent nor the best interests of the child. Both parties and their attorneys signed the consent judgment memo, as did Judge Payne, who signed it as "approved." The consent judgment memo was filed with the Wake County Clerk of Court at 4:45 p.m. on 14 October 1997.

On the final hearing date of 5 January 1998, plaintiff filed with the court, and served on defendant, objections to a final judgment as well

as motions pursuant to Rule 54(b) for revision prior to final judgment, and Rule 60 for relief from final judgment or order. Plaintiff objected to the entry of final judgment on the basis that he no longer consented to the terms of the consent judgment memo, and that a formal order without findings of fact and conclusions of law would be invalid. The trial court overruled plaintiff's objections. Thereupon plaintiff asked the court to permit him to offer the testimony of Dr. George Corwin as an offer of proof in support of his Rule 54(b) motion. The court sustained defendant's objection to this testimony. A document captioned "Consent Judgment for Permanent Custody" was signed at 10:00 a.m. as of 5 January 1998, *nunc pro tunc* 14 October 1997, but was stricken that same day because it contained findings of fact and conclusions of law which were not contained in the consent judgment memo.

Plaintiff filed an offer of proof and notice of hearing on 7 January 1998. On 20 January 1998, Judge Payne allowed the testimony of Dr. Corwin, but only as an offer of proof in support of plaintiff's motions. Dr. Corwin testified that he disagreed with the conclusion of the court-ordered evaluations as to the fitness of defendant as the child's primary physical custodian. Dr. Corwin stated that he based his opinion solely on the review of defendant's previous medical history; that he was retained by plaintiff in August 1997 and relayed his opinions to plaintiff's counsel in September 1997; and, that he did not consider any information regarding defendant's mental or emotional status after 14 October 1997. Apparently, plaintiff did not learn of Dr. Corwin's opinion regarding the fitness of defendant until a 3 November 1997 meeting with him. The court entered an order captioned "Consent Order for Permanent Custody" on 20 January 1998 which stated that judgment was rendered on 14 October 1997 and signed 20 January 1998. Plaintiff appeals.

[1] Plaintiff first contends that the trial court committed reversible error in entering the "Consent Order for Permanent Custody" on 20 January 1998, when plaintiff had filed motions objecting to entry of final judgment and a notice of hearing on entry of judgment. Plaintiff argues that he did not consent to the order of 20 January 1998; therefore, the order is not effective.

Plaintiff does not dispute that he and the defendant both consented to the consent judgment memo which was presented to the court on 14 October 1997, signed by Judge Payne as "approved," and filed by the clerk of court. Under Rule 58 of the North Carolina Rules

of Civil Procedure, "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (Supp. 1998). Defendant argues that applying the plain language of this rule to the facts in this case, judgment was entered on 14 October 1997. We find defendant's argument persuasive. The consent judgment memo states, in part:

> This memo is made and entered into between [plaintiff] and [defendant] as a complete settlement of all issues outstanding between them with regard to Child Custody, retroactive Child Support, Post Separation Support/Alimony and attorney fees and other costs in that matter now pending and set for trial on October 14, 1997 . . . . In that regard the parties have agreed as follows:

> 1. That this memo shall be received by the District Court as the memo of their agreement to be entered by the court with the consent of the parties. A formal order containing the terms of this Memo of Judgment shall be prepared by [plaintiff's attorneys] to be approved by [defendant's attorneys] and then signed as the final order by the court with regard to the issues set forth in the memo.

While, according to the consent judgment memo, some additional issues were to be mediated, it stipulated that:

> e. The issue of primary and secondary custody and other issues is not open to negotiation/mediation unless either party files a Motion to Change Custody. The burden of proof shall be a substantial change of circumstances adversely affecting the child.

It is clear from the language of the memo that both parties consented to its terms, which were to be binding and promulgated as an order of the court. "[T]he power of the court to sign a consent judgment depends upon the unqualified consent of the parties thereto; and the judgment is void if such consent does not exist at the time the court sanctions or approves the agreement and promulgates it as a judgment." *Milner v. Littlejohn*, 126 N.C. App. 184, 187, 484 S.E.2d 453, 456, *review denied*, 347 N.C. 268, 493 S.E.2d 458 (1997) (*quoting Brundage v. Foye*, 118 N.C. App. 138, 140, 454 S.E.2d 669, 670 (1995)). While plaintiff concedes that consent existed at the time the consent judgment memo was signed and entered into court records, he attempts to persuade this Court that the consent judgment memo was

not binding as a final judgment. Our review of similar cases indicates otherwise.

Like the present parties, the plaintiff and defendant in *Stevenson v. Stevenson*, 100 N.C. App. 750, 398 S.E.2d 334 (1990), announced to the court at their trial date that they had reached an agreement on the issues which were to be brought before it; however, they did not submit any memo to the court. Counsel for the plaintiff read certain provisions of the agreement into the record, including that plaintiff was to have sole possession of the marital home and the value of the home would be assessed through a certain formula which included a deduction in the value based on a loan to the parties from defendant's employer connected with the purchase of their home. *Id.* The trial court admonished the attorneys to draft an artful order, and after several revisions, a final draft, which both parties and their attorneys signed, was submitted to the court and filed 6 July 1988. *Id.* This judgment made no mention of the provision read into the record on the trial date which specified that the loan from defendant's employer would be included in the formula for computing the value of the parties' home; however, the Court stated:

> While in this case, there is clear evidence of a prior contrary oral agreement, there are no findings in the trial court's order which would establish that plaintiff and her attorney were mistaken as to the effect of the language of the agreement and that defendant was aware of this mistake at the time the consent judgment was signed. Our review of the record likewise reveals insufficient evidence to support such a conclusion. The agreement was altered many times by both parties. It should be enforced as written.

*Id.* at 753, 398 S.E.2d at 336. Because the parties in *Stevenson* did not submit a written agreement at their trial date, and revised the proposed order several times, it is apparent that they only had a partial agreement at the time they originally appeared before the trial court. To the contrary, the parties in the present case had made a full agreement on the trial date and represented it as such to the court.

In another similar case, *Blee v. Blee*, 89 N.C. App. 289, 365 S.E.2d 679 (1988), the parties and their attorneys represented to the court that a written agreement had been reached and signed by the parties; however, certain provisions were not in "writing" and plaintiff read them into the record. *Id.* at 291-92, 365 S.E.2d at 681. The written agreement was made part of a formal judgment signed by the judge approximately four months later, on 8 September 1986; however,

defendant filed a motion on 17 September 1986 pursuant to Rule 60(b) for relief from the judgment on the grounds that he withdrew his consent prior to the time the formal order was entered. The motion was granted, but this Court reversed that decision, stating:

> While we realize the better practice would be for the formal judgment to be prepared and signed immediately after the hearing, such is seldom, if ever, possible or practical, and it is not necessary or required by our rules. It would be a travesty to say that a party to a judgment so solemnly promulgated and entered as the one depicted by this record could repudiate that judgment at any time after the judgment was entered. Defendant's efforts three days later to repudiate the judgment are of no effect whatsoever.

*Id.* at 293, 365 S.E.2d at 682. The Court in *Blee* relied on the former version of Rule 58, which provided

> where judgment is rendered in open court, the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment for the purposes of these rules. The judge shall approve the form of the judgment and direct its prompt preparation and filing.

*Id.* at 292-93, 365 S.E.2d at 681-82. On this basis the Court held that "the record before us manifests that a judgment was promulgated and entered by Judge Long on 13 June 1986, and the signing thereof on 8 September 1986 merely memorialized said judgment." *Id.* at 293, 365 S.E.2d at 682. Rule 58 has been modified since *Blee* in that judgments in open court are no longer considered final judgments. However, unlike that case, the judgment here was not merely rendered in open court. Rather, a document represented by the parties to be their full agreement was presented to the court, signed by the parties, and filed by the clerk of court. As stated in *Blee*, it would be a better practice to have the formal order drafted at the time the parties present a "memo of agreement;" however, oftentimes parties reach settlement just prior to or on the date of trial. Nevertheless, if a consent agreement is presented to the court by the parties who express their consent, is approved by the court and filed with the clerk of court, the agreement is a final judgment pursuant to Rule 58 of the North Carolina Rules of Civil Procedure.

Accordingly, we conclude that the consent judgment memo filed on 14 October 1997 is a final judgment. While the consent judgment memo states that a "final order" would be entered, the record reveals

that the order of 20 January 1998 is identical in its terms and provisions as the consent judgment memo. Apparently, the directive for a "final order" was only contained in order for a more formalized document to be entered into court records. Therefore, the entry of judgment on 20 January 1998 was merely surplusage to the final judgment of 14 October 1997. Plaintiff's attempt to rescind his consent after that date is ineffectual, as he concedes consent existed at the time the 14 October 1997 judgment was rendered. A consent judgment is not only a judgment of the court but is also a contract between the parties and "[i]t cannot be amended without showing fraud or mutual mistake, which showing must be by a separate action, or by showing the judgment as signed was not consented to by a party, which showing may be by motion in the cause." *Cox v. Cox*, 43 N.C. App. 518, 519, 259 S.E.2d 400, 401-02 (1979), *review denied*, 299 N.C. 329, 265 S.E.2d 394 (1980). Accordingly, we find no error.

[2] Plaintiff next contends that the trial court committed reversible error in signing the "Consent Order for Permanent Custody" of 20 January 1998 because the document contained neither findings of fact nor conclusions of law related to the custody of the parties' minor child. Because we have ruled that the consent judgment memo of 14 October 1997 was actually the final judgment, we will apply plaintiff's assignment of error to that document.

This Court has held that in a proceeding for custody and support of a minor child, the trial court is required to "find the facts specially and state separately its conclusions of law thereon and direct entry of appropriate judgment." *Montgomery v. Montgomery*, 32 N.C. App. 154, 156, 231 S.E.2d 26, 28 (1977) (*citing* N.C. Gen. Stat. § 1A-1, Rule 52 (a)(1)). Additionally, N.C. Gen. Stat. § 50-13.2 mandates that:

An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party and shall make findings accordingly. An order for custody must include findings of fact which support the determination of what is in the best interest of the child. . . .

N.C. Gen. Stat. § 50-13.2(a) (Supp. 1988). The trial court is required to find the specific ultimate facts to support the judgment, and the facts

found must be sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence. *Montgomery*, 32 N.C. App. at 156-57, 231 S.E.2d at 28.

While findings of fact and conclusions of law are clearly necessary in an adjudication of child custody, a review of existing precedent indicates that they are not necessary when a consent judgment is rendered. Permanent custody orders arise in one of two ways: (1) the trial court enters a consent decree which contains the agreement of the necessary parties, or (2) after a hearing of which all parties so entitled are notified and at which all parties so entitled are given an opportunity to be heard, the court issues an order resolving a contested claim for permanent custody of a child. *Regan v. Smith*, 131 N.C. App. 851, 852, 509 S.E.2d 452, 454 (1998) (citations omitted). While the welfare of the child is the paramount consideration which must guide the court in a custody decision and findings of fact regarding the competing parties must be made to support the necessary legal conclusions, the trial "court need *only find those facts which are material to the resolution of the dispute*." *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990), *aff'd*, 328 N.C. 324, 401 S.E.2d 362 (1991) (emphasis added) (*citing Green v. Green*, 54 N.C. App. 571, 284 S.E.2d 171 (1981)). An order of permanent custody based on consent of the parties does not involve adjudication or resolution of the merits of the case. Any judgment by consent

> is the agreement of the parties, their decree, entered upon the record with the sanction of the court. It is not a judicial determination of the rights of the parties and does not purport to represent the judgment of the court, but merely records the pre-existing agreement of the parties. It acquires the status of a judgment, with all its incidents, through the approval of the judge and its recordation in the records of the court.

*McRary v. McRary*, 228 N.C. 714, 719, 47 S.E.2d 27, 31 (1948) (citations omitted). This Court specifically stated that a consent judgment need not contain findings of fact or conclusions of law in *In re Estate of Peebles*, 118 N.C. App. 296, 454 S.E.2d 854 (1995):

> [A] consent judgment is "merely a recital of the parties' agreement and not an adjudication of rights." This type of judgment does not contain findings of fact and conclusions of law because the judge merely sanctions the agreement of the parties.

*Id.* at 300, 454 S.E.2d at 857 (citations omitted). While N.C. Gen. Stat. § 1A-1, Rule 52 and N.C. Gen. Stat. § 50-13.2 mandate that findings of

fact and conclusions of law be made when a court adjudicates child custody, those statutes anticipate an adjudication by the court. As previously stated by this Court:

> A statutory mandate which contemplates the production of a trial record sufficient to permit proper appellate review should not be held to apply automatically to a consent judgment which ends litigation, and, by its very nature, contemplates no appellate review. Rather, a consent judgment should be examined more generally to see if it is fair, if it does not contradict statutory or judicial policy.

*Cox v. Cox*, 36 N.C. App. 573, 575-76, 245 S.E.2d 94, 96 (1978). Additionally, it is a settled principle of law in this state that a consent judgment is the contract of the parties entered upon the records of a court of competent jurisdiction with its sanction and approval, and persons *sui juris* have a right to make any contract not contrary to law or public policy. *Wachovia Bank v. Bounous*, 53 N.C. App. 700, 281 S.E.2d 712 (1981). *See Walters v. Walters*, 307 N.C. 381, 298 S.E.2d 338 (1983); *Ross v. Voiers*, 127 N.C. App. 415, 490 S.E.2d 244 (1997). Therefore, the court should review a consent judgment to ensure that it does not contradict statutory, judicial, or public policy, but it need not make findings of fact or conclusions of law. When parties enter into an agreement and ask the court to approve the agreement as a consent judgment, they waive their right to have the court adjudicate the merits of the case. In the present case, the parties did not wish for the court to adjudicate child custody, having resolved that issue between them. Therefore, the court has no duty to make findings of fact or conclusions of law as to the child's best interest when it approved the parties' agreement. Accordingly, we find no merit to plaintiff's second assignment of error.

[3] Finally, plaintiff contends that the trial court committed reversible error in failing to grant plaintiff's motions made pursuant to Rule 54(b) and Rule 60 of the North Carolina Rules of Civil Procedure.

The record reveals that the trial court allowed Dr. Corwin to testify only as an offer of proof for plaintiff's motions. "[F]or a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Love*, 131 N.C. App. 350, 357, 507 S.E.2d 577, 583 (1998) (*quoting State v. Simpson*, 314

N.C. 359, 370, 334 S.E.2d 52, 60 (1985)). Plaintiff has not assigned error to the exclusion of Dr. Corwin's evidence. Furthermore, there is no indication that the trial court considered his testimony proffered or plaintiff's Rule 54(b) or Rule 60 motions, as the record does not reveal any order by the trial court in this regard. Rule 9(h) of the North Carolina Rules of Appellate Procedure provides that the record on appeal must contain "a copy of the judgment, order, or other determination from which appeal is taken." N.C.R. App. P. 9(h) (1998). In order to preserve a question for appellate review, the complaining party must "obtain a ruling upon the party's request, objection or motion." N.C.R. App. P. 10(b)(1) (1998). The Rules of Appellate Procedure are mandatory. *Sessoms v. Sessoms*, 76 N.C. App. 338, 332 S.E.2d 511 (1985). Because the record in this case does not contain a written order denying plaintiff's motions, such order was not entered by the trial court. *State v. Gary*, 132 N.C. App. 40, 42, 510 S.E.2d 387, 388 (1999) (*citing State v. Williams*, 280 N.C. 132, 137, 184 S.E.2d 875, 878 (1971) (noting that the appellate courts are "bound by the record as certified and can judicially know only what appears of record")). Accordingly, this assignment of error is dismissed.

Affirmed.

Judges MARTIN and McGEE concur.