SHARON DAVIS, Plaintiff v. TORIAN LEWIS McMILLIAN, Defendant

No. COA01-887

(Filed 6 August 2002)

**1. Child Support, Custody, and Visitation— custody—judicial notice from prior custody action between biological parents—action between biological parent and non-parent**

The trial court did not err in a child custody case by taking judicial notice under N.C.G.S. § 8C-1, Rule 201(b) of findings of fact of unfitness from a prior custody action between the biological parents to support an award of custody in this action in favor of plaintiff non-parent second cousin and against defendant biological mother, because: (1) any past circumstance. or conduct which would impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding; and (2) an actual court determination based on a preponderance of the evidence from a prior proceeding must

**DAVIS v. McMILLIAN**

[152 N.C. App. 53 (2002)]

be considered since a trial court must consider testimonial evidence which only meets the test of relevancy.

**2. Child Support, Custody, and Visitation— custody—findings of fact—competent evidence**

The trial court's findings of fact supporting the conclusion of defendant biological mother's unfitness in a child custody case between defendant biological mother and plaintiff non-parent second cousin were supported by competent evidence, because: (1) an emergency medical technician and another squad worker both testified about the bad conditions at defendant's home when they came to attend to the minor child's seizure due to a high fever, and the minor child was found dehydrated and lying in a soiled diaper; (2) although her child had a multitude of medical problems, defendant could not testify on the details of the child's care and sicknesses; (3) witnesses testified that on separate instances, defendant rode her minor child in a vehicle without a car seat; (4) the trial court considered the earlier determination made by a preponderance of the evidence that defendant was unfit; (5) the record shows that defendant is unable to take on normal adult responsibilities such as acquiring a driver's license, getting and maintaining a job, taking care of her living expenses, and providing complete care of her older son who currently resides in her home; and (6) defendant has never given plaintiff any child support for her minor child that has resided with plaintiff.

**3. Child Support, Custody, and Visitation— custody—conclusions of law**

A trial court's conclusions of law in a child custody case resulting in the custody to plaintiff non-parent second cousin over defendant biological mother were supported by the findings of fact, because: (1) defendant is not able to adequately care and provide for the minor child and is not able to properly see to the needs of the child; (2) the earlier determination that defendant was unfit as well as the evidence presented at the subject hearing support the conclusion that her actions were inconsistent with her protected status as a parent; and (3) the record contains evidence that it was in the child's best interest to remain with plaintiff, and plaintiff has never denied defendant access to the child.

**DAVIS v. McMILLIAN**

[152 N.C. App. 53 (2002)]

Appeal by defendant from order entered 25 January 2001 by Judge Thomas Aldridge, Jr. in District Court, Craven County. Heard in the Court of Appeals 24 April 2002.

*McGougan Law Firm, by Paul J. Ekster and Willis Harper, Jr., for plaintiff-appellee.*

*William L. Davis, III, for defendant-appellant.*

WYNN, Judge.

Biological mother Torian Lewis McMillian, presents the following issues on appeal from an order awarding custody of her child to non-parent Sharon Davis: (I) Did the trial court err by taking judicial notice of findings of fact from a prior custody action between the biological parents to support an award of custody in this action between the biological mother and a non-parent? (II) Were the findings of fact which supported the trial court's conclusion of unfitness supported by competent evidence? (III) Were the trial court's conclusions of law resulting in the award of custody to a non-parent supported by findings of fact? We affirm the trial court's award of custody.

Ms. McMillian is the biological mother of a minor child born in 1998; Ms. Davis is the child's second cousin. In a prior custody action during 1999 between Ms. McMillian and the child's biological father, George Ronald Manuel, the trial court found Ms. McMillian unfit to have custody of her minor child; accordingly, the trial court granted custody to Mr. Manuel with visitation by Ms. McMillian. Mr. Manuel died on 16 October 2000; thereafter, his first cousin, Ms. Davis, brought this action and obtained an *ex parte* order for custody of the minor child who, along with Mr. Manuel, had lived with Ms. Davis for over two years. At the temporary custody hearing, the trial court incorporated the findings of fact on Ms. McMillian's unfitness adjudicated in the 1999 action, and awarded temporary custody to Ms. Davis. On 23 January 2001, the trial court granted Ms. Davis primary care, custody, and control of the minor child, and allowed Ms. McMillian visitation. This appeal followed.

## (I)

[1] On appeal, Ms. McMillian argues that the trial court erroneously took judicial notice of findings from a prior custody action between the biological parents to support an award of custody to a non-parent in this action. We must disagree because our Supreme Court recently

set forth "that any past circumstance or conduct which could impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding." *Speagle v. Seitz*, 354 N.C. 525, 531, 557 S.E.2d 83, 87 (2001), *reh'g denied*, 355 N.C. 224, 560 S.E.2d 138, *cert. denied*, 122 S.Ct. 2589, 70 U.S.L.W. 3656 (2002).

Under Rule 201 (b) of the North Carolina Rules of Evidence, "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2001). "No decisions in North Carolina specifically indicate that it is improper for a trial court to use orders from temporary hearings or contempt hearings in the same case to support permanent custody orders. This Court has found that it is not improper for a trial court to take judicial notice of earlier proceedings in the same cause." *Raynor v. Odom*, 124 N.C. App. 724, 728, 478 S.E.2d 655, 657 (1996) (the trial court took judicial notice of earlier proceedings of temporary custody orders, as evidence in awarding custody in the same case between biological parents and intervening grandparents); *see also In re Byrd*, 72 N.C. App. 277, 324 S.E.2d 273 (1983).

Most recently, in *Speagle v. Seitz*, our Supreme Court confronted an appeal by grandparents who sought a reversal of this Court's holding that the biological mother of a minor child had not lost her constitutionally protected status as a parent because there existed "no evidence the biological mother was engaging in any conduct inconsistent with her protected status in August 1998, the date of the custody trial, or any time soon before that trial." *Speagle v. Seitz*, 141 N.C. App. 534, 537, 541 S.E.2d 188, 190 n. 1 (2000). In that case, the grandparents argued that although the biological mother had been acquitted for the murder of their son (the biological father), the trial court should have considered testimonial evidence claiming that the biological mother was involved in the murder of their son.

Our Supreme Court agreed stating: "[W]e consider this issue important in the development of our law in custody proceedings." *Speagle v. Sietz*, 354 N.C. at 531, 557 S.E.2d at 87. The Court continued by disagreeing with the inference contained in the Court of Appeals' decision that custody proceedings, unlike termination of parental rights proceedings, cannot and should not be concerned

DAVIS v. McMILLIAN

[152 N.C. App. 53 (2002)]

with past circumstances or past actions and conduct of a parent when determining custody as between parents and non-parents. Instead the Supreme Court held:

> We conclude that any past circumstance or conduct which could impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding.

*Id.*

The character of the evidence that our Supreme Court allowed in the *Speagle* case especially compels the result we reach in determining that the evidence in this case was admissible. In *Speagle*, our Supreme Court found "the logic and authority set forth in *Simpson v. Brown*, 67 Cal. App. 4th 914, 79 Cal. Rptr. 2d 389 (1998), to be compelling."

> As a matter of case law, as well as common sense, the question of whether one parent has actually murdered the other is about as relevant as it is possible to imagine in any case involving whether the surviving parent should be allowed any form of child custody.

*Speagle*, 354 N.C. at 532, 557 S.E.2d at 87 (*quoting Simpson* at 925-26). In *Simpson*, the trial court allowed evidence in a custody case from an unrelated civil wrongful death action that was determined by a jury to have been proven by a preponderance of the evidence. However, in *Speagle*, the character of the evidence was that of the testimony of a witness whose lone testimony implicated the biological mother in the murder of the biological father. Thus, while *Speagle* distinguished the proof required in a criminal trial (reasonable doubt) from that required in a child custody proceeding (preponderance) the evidence allowed in *Speagle* was based only on the relevance of the testimony, not a determination by a prior proceeding that it had been proven by a preponderance nor by any independent due process proceeding such as a "mini-trial" at the custody proceeding.

In the case *sub judice*, the trial court considered the 1999 custody determination of unfitness to support the award of custody to Ms. Davis. That determination, unlike the naked testimonial evidence sanctioned in *Speagle*, was a court-made determination in which the parties had been afforded due process and the trial judge had found

by a preponderance of the evidence that the mother was unfit. Since under *Speagle*, a trial court must consider testimonial evidence which only meets the test of relevancy, then most assuredly, an actual court determination based on a preponderance of the evidence from a prior proceeding must be considered. Thus, we must reject this assignment of error.

### (II)

**[2]** Ms. McMillian next argues that the trial court's findings of fact supporting the conclusion of unfitness were not supported by competent evidence. We disagree.

In a child custody case, the trial court's findings of fact are binding on this Court if they are supported by competent evidence. *See Sain v. Sain*, 134 N.C. App. 460, 464, 517 S.E.2d 921, 925 (1999). "However, the findings of fact and conclusions of law must be sufficient for this Court to determine whether the judgment is adequately supported by competent evidence." *Cantrell v. Wishon*, 141 N.C. App. 340, 342, 540 S.E.2d 804, 805 (2000); *see Buckingham v. Buckingham*, 134 N.C. App. 82, 88-89, 516 S.E.2d 869, 874, *review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999). "Generally, on appeal from a case heard without a jury, the trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996).

In the present case, Ms. McMillian argues that the following findings of fact were not sufficiently supported by the evidence:

9. The Court takes judicial notice of the following facts contained in the prior Orders of the Court entered in Case Number 98-CVD-1358 where the Defendant in this action and the child's deceased father were the parties in an action for custody.

10. Specifically, the Court finds based upon that Order that between November of 1998 after the birth of the child and the first week of January 1999, the Defendant left the State of North Carolina and temporarily resided in Pennsylvania and New York until returning to the State of North Carolina with the minor child. On or about April 19 of 1999, the Defendant again left the State of North Carolina with the minor child. On April 20, 1999, in File Number 98-CVD-1358, the Honorable Napoleon B. Barefoot, Jr. entered an Order. In that Order, the presiding judge found that the above referred to case was scheduled for hearing on April 19,

1999. The mother of the child, Torian McMillian, hereinafter referred to as the Defendant, and her witnesses were not present in court until after 10:30 a.m. on that date. In the presence of the Plaintiff and the Defendant and their attorneys, the Court announced that this matter would be heard on its merits at 2:00 p.m. on April 20, 1999. The matter came on for hearing on that date and at that time the Defendant failed to appear at the hearing. The Court heard evidence and testimony and made detailed findings with regard to the fitness of Mr. George Manuel to have the care, custody, and control of the minor child. The Court specifically found that at that time the biological father was living with Mrs. Sharon Davis, the cousin of Mr. Manuel, Mrs. Davis's daughter and husband in a three-bedroom, three-bath home. After the birth of the child, Mr. Manuel and Ms. McMillian resided together at the Plaintiff's residence with the child and Mr. Manuel and Mrs. Davis primarily cared for the minor child because Ms. McMillian slept until noon and would not care for the daily needs of the child including feeding and bathing. Based on the findings in that Order, Mr. Manuel was granted temporary custody and further hearing was scheduled for May 17, 1999.

11. At the hearing on May 17, 1999, the Honorable Napoleon B. Barefoot, Jr. entered an Order at that time granting Mr. Manuel permanent care, custody and control over the minor child. In that Order the Court specifically found that North Carolina was the home state of the child. The Court further recited the fact that the Defendant failed to be present at a hearing in April after being duly notified in open court and the Court incorporated the findings of its April 20, 1999 Order into the findings of its May 17, 1999 Order. At that time the Defendant again failed to appear in court for this hearing and was remaining out of the State of North Carolina with the minor child. The Defendant was found to be unfit and not a proper person to be awarded the custody of the child, based on the findings in the April 19 and May 17 orders.

12. In the Court's April 19 Order, the Court found facts incorporated into the May 17, 1999 Order which indicated that the Defendant had not and was not able to properly see to the needs of the child. Specifically, when the minor child was returned to the custody of Mr. Manuel pursuant to an Order of January 12, 1999, the child was ill and suffering from cradle cap. The child had no milk, no diapers, dirty bottles, and the child had on clothing that was urine soaked. Further, the child was suffering from

diarrhea and vomiting and Mr. Manuel sought medical care. At that time the child was hospitalized for asthma, a severe cold, wheezing, diarrhea and dehydration. Further, the Court specifically found that at a prior hearing the Defendant testified that for the three months she was in Pennsylvania that the child was ill and she did not even know of a location of an emergency room or know the address of the place where she had lived in the State of Pennsylvania.

Ms. McMillian argues that findings 9 through 12 are not specific or detailed enough to support the trial court's determination of Ms. McMillian's fitness at the time of the hearing. We disagree.

At the custody hearing, Teresa Foley, an emergency medical technician, testified that she was called to Ms. McMillian's home on 10 July 2000 because her son was having a seizure due to a high fever. When she arrived at Ms. McMillian's home, she found the child dehydrated and lying in a soiled diaper. She stated that there were no lights in the home for several minutes, the home "smelled like a dog" and dishes were on the counter and sink. Another squad worker, Ruth Williams, presented substantially similar testimony. The record also showed that although her son has had a multitude of medical problems, Ms. McMillian could not testify on the details of his care and sicknesses. Moreover, witnesses testified that on separate instances, Ms. McMillian rode her minor child in a vehicle without a car seat. In addition to this evidence, as previously noted, the trial court also considered the earlier determination made by a preponderance of the evidence that Ms. McMillian was unfit. In light of this evidence and the prior court determination supporting these findings of fact, we uphold the trial court's findings of facts 9 through 12.

Ms. McMillian also challenges the following findings of fact as not being supported by competent evidence:

13. The Defendant mother presently lives on Andrew Jackson Street or Highway in the town limits of Fair Bluff, North Carolina. She resides in a singlewide two-bedroom mobile home, which is an older mobile home. The Defendant was unable to give clear evidence as to the age of the mobile home, although it is centrally heated and air conditioned according to the Defendant's grandmother who gave the mobile home to her granddaughter and titled the mobile home in her granddaughter's name. The mobile home is located on land owned by the grandmother of the Defendant. The Defendant does not have a telephone and does

not have an account with the power company in her name, in that she owes bills to these utilities. The account for the power is currently in the name of the grandmother. The Defendant was unable to testify and give clear evidence of her knowledge of the cost of the utilities. The Defendant does not own a car and has never had an operator's license in that she has never learned how to drive, although the Defendant appears to be in her late twenties. She has not held full-time employment since 1991 when she worked in housekeeping in the Myrtle Beach, South Carolina area. She is currently involved with a program at Southeastern Community College called JobLink, where she is assisted in looking for employment. She has never been called in for any job interviews through this program. She resides in the two-bedroom mobile home with another child, who is three years and eleven months old and will be referred to herein as Jimmy. Jimmy is an older sibling of the minor child who is the subject of this action. The Defendant receives $236.00 per month in food stamps and has no other source of income. The Defendant's mother installed a satellite dish at the residence of Defendant and her mother pays that bill. This was installed for the use and benefit of the older child, Jimmy, who lives in the home. The Defendant is very limited in her intellectual functioning. Her extended family of aunts, cousins or grandmother daily go by her residence to check on the Defendant and her four-year-old who lives in the mobile home. The older sibling, Jimmy has some developmental difficulties and is somewhat aggressive or plays rough. There is evidence that Jimmy suffers from many of the same health problems as Chanti and that Jimmy, with the assistance of relatives, has received appropriate medical care and is generally clean, neat and appropriately dressed. The Defendant's minor child, Jimmy, has been transported in motor vehicles without being placed in a child safety seat as required by law. The Defendant mother has also been present in the vehicle on these occasions.

14. In July of 2000, the minor child Jimmy suffered from seizures as a result of a sudden elevation in temperature, apparently due to some type of ear infection. A rescue unit was called to transport the child to the hospital. During the time that the rescue personnel were in the mobile home of the Defendant, there was only one light in the residence, that being a lamp plugged into the wall near the sofa where the child was unconscious. During the time that the rescue personnel were attending the minor child, the

DAVIS v. McMILLIAN

[152 N.C. App. 53 (2002)]

light went out for some unexplained reason. There was no other source of light in the mobile home and no other lights were turned on.

15. From the birth of the minor child in question until the Defendant removed the minor child from the State of North Carolina, the minor child and the natural father resided with the natural father's cousin, Sharon Davis, Plaintiff in this action. After the Defendant moved from the home sometime after the birth of the child, the Plaintiff and the natural father continued to provide day-to-day care of the child. At that time the Plaintiff was employed full-time and the natural father was at home on a full-time basis taking care of his minor child. After the minor child was returned to the natural father, the natural father and the Plaintiff continued to provide day-to-day care for the minor child and the Plaintiff has continued since the death of the father to raise the child as if she were her own. When necessary, the Plaintiff has transported the child to doctor's appointments and to her daycare. The minor child has her own room in the three-bedroom brick home belonging to Plaintiff. The Plaintiff possesses a commercial driver's license. The Plaintiff sees that the minor child attends church on a regular basis. The Plaintiff is a member of her church choir and works with the Bible School program. The Plaintiff has a high school diploma. The Plaintiff has developed a close bond and relationship with the minor child.

16. The Defendant is not able to adequately care for the minor child, Jimmy, that lives with her except for the assistance of family who provide additional financial help and transportation to and from doctor's appointments and other necessary family trips to the grocery store and other places.

17. The Defendant is not a fit and proper person to have the primary or exclusive care, custody, and control of the minor child in question.

The record shows competent evidence that Ms. McMillian is unable to take on normal adult responsibilities such as acquiring a driver's license, getting and maintaining a job, and taking care of her living expenses, and providing complete care of her son, who currently resides in her home. During her testimony, Ms. McMillian repeatedly made inconsistent statements about her living conditions, work history, and her parenting skills. Ms. McMillian did not give

information about the home she lived in; she did not have a telephone; and could not have an account for other utilities in her name because she had an outstanding bill with the utility company. Moreover, there was testimony showing that Ms. McMillian is unable to care for her three-year-old son who lives with her, without the constant assistance of her family. Additionally, Ms. McMillian has never given Ms. Davis child support for her minor child. This evidence as well as the consideration by the trial court of the prior determination of unfitness supports findings of fact 13 through 17.

### (III)

[3] Ms. McMillian argues lastly that the trial court's conclusions of law resulting in the award of custody to a non-parent were not supported by findings of fact. We disagree.

On appeal, we review a finding of a natural parent's unfitness *de novo* by examining the totality of the circumstances. *See Raynor v. Odom*, 124 N.C. App. at 731, 478 S.E.2d at 659. In *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49 (2000), the United States Supreme Court recognized that natural parents have a constitutionally-protected parental status derived from the fundamental right under the constitution to make decisions concerning the care, custody, and control of their children. The Court noted that a natural parent is presumed to act in the child's best interest and thus, the state need not be involved in determining the ability of that parent to make the best decisions concerning the rearing of that parent's children. *Id.* at 68-69, 147 L. Ed. 2d at 58. *Accord Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042 (1923) ("The rights to conceive and to raise one's children have been deemed 'essential.' "). Moreover, in North Carolina, it is well settled law that the biological parent "is the natural guardian, and, as such, has the legal right to custody, care and control, is a suitable person, even though others may offer more material advantages in life for the child." *Browning v. Humphrey*, 241 N.C. 285, 287, 84 S.E.2d 917, 918 (1954).

Nonetheless, the "protection of the parent's interest is not absolute." *Price v. Howard*, 346 N.C. at 79, 484 S.E.2d at 534. With a finding that the natural parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to custody, care and control of their children may not prevail. *See Petersen v. Rogers*, 337 N.C. 397, 403, 445 S.E.2d 901, 905 (1994). Thus, a natural parent's constitutionally protected status may be lost, if a trial court determines that clear and convincing evidence

shows that the parent's conduct is inconsistent with that protected status. *Owenby v. Young*, 150 N.C. App. 412, 563 S.E.2d 611 (2002). Indeed, if the trial court determines that a natural parent has acted inconsistent with the protected status, then the court should apply the "best interests of the child" test in resolving custody disputes between the parent and the non-parent. *See Price v. Howard*, 346 N.C. at 79, 484 S.E.2d at 534. The conduct "must have some negative impact on the child or constitute a substantial risk of such impact." *Speagle*, 354 N.C. at 531, 557 S.E.2d at 87.

In this case, the trial court concluded as a matter of law in pertinent part:

3. The Defendant is not a fit and proper person to have the care, custody and control of the minor child.

4. Having previously been found to be unfit to have the care, custody and control of the minor child, the standard for determining custody in this matter is what is in the best interest of the minor child.

5. It is in the best interest of the minor that she be placed in the primary care, custody and control of the plaintiff.

These conclusions were supported by the previously noted findings of fact which were based on evidence showing that Ms. McMillian is not able to adequately care and provide for the minor child and is not able to properly see to the needs of the child. Moreover, the earlier determination that Ms. McMillian was unfit as well as the evidence presented at the subject hearing support the conclusion that her actions were inconsistent with her protected status as a parent. Indeed, as noted earlier, the trial court did not solely rely on the determination of unfitness from the 1999 custody case but made additional findings based on present circumstances supported by competent evidence.

Moreover, the record contains evidence supporting the trial court's determination that it was in the child's best interest that she remain with Ms. Davis. For example, the child had lived with Ms. Davis nearly all of her life; Ms. Davis had developed a close relationship with the child and cared for the child handling her day-to-day care, medical appointments and support. Furthermore, the record shows that Ms. Davis has never denied Ms. McMillian access to the minor child. Since the record shows competent evidence to support

the trial court's findings of fact, which in turn support the conclusions of law, we affirm the judgment of the trial court awarding custody to Ms. Davis.

Affirmed.

Judges McCULLOUGH and BIGGS concurred.