BRYANT v. WILLIAMS

[161 N.C. App. 444 (2003)]

━━━━━━━━━━

STEVE D. BRYANT, Plaintiff v. DALE O. WILLIAMS, Defendant

No. COA02-1431

No. COA02-1586

(Filed 2 December 2003)

## 1. Appeal and Error— notice of appeal—timeliness

An appeal was heard in the Court of Appeals, even though the notice of appeal was not timely given from an April order, where there was a subsequent June order which was a recapitulation of the first, and from which notice of appeal was timely given.

## 2. Domestic Violence— consent judgment—complaints dismissed—no finding of violence

The trial court could not enter an order approving a consent judgment intended to stop domestic violence after dismissing the parties' domestic violence complaints. The court's authority to enter a protective order or to approve a consent agreement depends upon a finding that an act of domestic violence occurred.

Judge WYNN concurring in the result.

Appeal by defendant from orders entered 21 June 2002 and 26 July 2002 by Judge Robert M. Brady in Catawba County District Court. Heard in the Court of Appeals 26 August 2003.

*J. Steven Brackett Law Office, by J. Steven Brackett, for plaintiff-appellee.*

*Crowe & Davis, P.A., by H. Kent Crowe, for defendant-appellant.*

CALABRIA, Judge.

Dale O. Williams ("Ms. Williams") appeals the trial court's order approving a consent agreement, entered pursuant to N.C. Gen. Stat. § 50B-3, and denying her Rule 60(b) motion to set aside the orders.[1] We find because the order approving the consent agreement dismissed the domestic violence claims, the trial court could not enter this order under Chapter 50B, and therefore it must be vacated.

In early April 2002, the parties filed complaints against each other seeking domestic violence protective orders. Ms. Williams' *ex parte* order was granted; Mr. Bryant's was denied. On 22 April 2002, a hearing on Ms. Williams' order was held, and a consent order was entered and filed. Thereafter, on 8 May 2002, Ms. Williams filed a Rule 60(b) motion seeking relief from the 22 April order. On 21 June 2002, the trial court entered an order that was a typewritten recapitulation of the earlier order, but was not, as is common practice, entered *nunc pro tunc* to 22 April. Although the trial court had not ruled on the Rule 60(b) motion, Ms. Williams filed notice of appeal from the June order. On 26 July 2002, the trial court denied the Rule 60(b) motion; Ms. Williams appealed.

[1] First, we note the concurring opinion asserts this Court does not have jurisdiction to consider Ms. Williams' appeal of the April order because no appeal from the order was timely made. Ms. Williams appealed both the June typewritten order and the denial of her Rule 60(b) motion to set aside the April order. Under the concurring opinion's analysis that the April order was valid because "it was 'reduced to writing, signed by the judge, and filed with the clerk of court,' " the June order is also a valid order. The parties stipulated that Ms. Williams gave timely notice of appeal from the June order as well as the order denying her Rule 60(b) motion to set aside the April order.

---

1. In this opinion we consolidate and address both Ms. Williams' appeals: COA02-1431, from the 21 June order, and COA02-1586, from the 26 July order.

**BRYANT v. WILLIAMS**

[161 N.C. App. 444 (2003)]

[2] We now address the merits of the appeal. Ms. Williams asserts the trial court lacked subject matter jurisdiction to enter the consent order because the order purported to transfer real property, an action outside the scope of Chapter 50B. We do not reach this argument because the complaints were dismissed and therefore the trial court could not enter an order under Chapter 50B.

The consent orders provide, in part, that both parties' claims for domestic violence orders "shall be dismissed." Where the complaint is voluntarily dismissed, plaintiff is returned "to the legal position enjoyed prior to filing of the complaint." *Augur v. Augur*, 356 N.C. 582, 590, 573 S.E.2d 125, 131 (2002) (citing *Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000)). Accordingly, no allegation of domestic violence remained. Although our District Courts are empowered to enter protective orders or approve consent agreements under Chapter 50B, these orders are authorized only "to bring about a cessation of acts of domestic violence." N.C. Gen. Stat. § 50B-3(a) (2001). The court's authority to enter a protective order or approve a consent agreement is dependent upon finding that an act of domestic violence occurred and that the order furthers the purpose of ceasing acts of domestic violence. *See Brandon v. Brandon*, 132 N.C. App. 646, 654, 513 S.E.2d 589, 595 (1999) (where a protective order does not contain a conclusion of law supported by adequate findings of fact that domestic violence occurred, the "conclusion [of law] cannot provide grounds for issuance of the DVPO [Domestic Violence Protective Order]"); *Augur*, 356 N.C. at 590, 573 S.E.2d at 131 (where the court concludes there was no act of domestic violence, the court may not enter a protective order and the court's decision "ha[s] the effect of leaving defendant exactly where he was prior to the filing of plaintiff's complaint"); *Story v. Story*, 57 N.C. App. 509, 291 S.E.2d 923 (1982) (Chapter 50B authorizes the trial court to enter protective orders only where there is an act of domestic violence occurring on or after the effective date of the statute). Although the concurring opinion states these cases do not arise from mutual domestic violence protective orders, we find this distinction between cases arising from mutual claims for domestic violence and claims by only one party is immaterial because the statute generally does not distinguish between mutual claims and claims by only one party requesting a domestic violence protective order.[2]

2. We recognize that mutual claims require an additional complaint and detailed findings by the court. *See* N.C. Gen. Stat. § 50B-3(b) (2001).

Further, the concurring opinion's quote from *In Re Estate of Peebles*, 118 N.C. App. 296, 300, 454 S.E.2d 854, 857 (1995) which was reiterated in *Buckingham v. Buckingham*, 134 N.C. App. 82, 89, 516 S.E.2d 869, 875 (1999) is not applicable here because those cases merely explain that a consent order need not contain findings of fact and conclusions of law as required by N.C. Gen. Stat. § 1A-1, Rule 52 (2001). Here, there is no assertion that this order is invalid for failing to have Rule 52 findings of fact and conclusions of law. Rather, the issue is whether by dismissing the domestic violence complaints the court loses its authority to enter *any* domestic violence protective order. We hold it does. Therefore, since the order in the case at bar dismissed the complaints for a domestic violence order, and the court could not enter an order approving a consent agreement for the purpose of ceasing domestic violence pursuant to Chapter 50B, the consent order must be reversed.

The concurring opinion considers that the April 2002 order "may still be enforceable under contract law." Whether the order constitutes a valid contract has not been raised by the parties or litigated at the trial level; accordingly it is not properly before our appellate court.

The order of the trial court is

Vacated.

Judge HUDSON concurs.

Judge WYNN concurs in the result in a separate opinion.

WYNN, Judge concurring in the result.

I disagree with the majority's holding that because the trial court's order approving the consent agreement dismissed the domestic violence claims, the trial court could not enter its order under Chapter 50B. Under N.C. Gen. Stat. § 50B-3(a), "the court, . . ., may grant any protective order or approve any consent agreement to bring about the cessation of acts of domestic violence." As I believe the consent agreement was entered into by the parties in order to bring about a cessation of acts of domestic violence, I would conclude the trial court had authority to enter the consent order. However, because the trial court failed to comply with N.C. Gen. Stat. § 50B-3(b), I concur in the result.

BRYANT v. WILLIAMS

[161 N.C. App. 444 (2003)]

In this case, the parties entered into a consent agreement on 22 April 2002, which provided:

1. Files 02 CVD 1071 and 02 CVD 1038 shall be consolidated into 02 CVD 1071;

2. Both parties claims for domestic violence orders shall be dismissed;

3. Both parties, however, agree that the Court shall have jurisdiction over them personally so as to enforce the consent agreement of the parties herein as a consent judgment;

4. Plaintiff (Steven O. Bryant) shall have the immediate possession and use of a rental house owned by Defendant (Dale O. Williams) at 1125 Loblolly Lane, Newton;

5. Defendant shall continue to have the use and possession of the residence jointly owned by Plaintiff and Defendant on the condition that not later than 5 p.m. April 24, 2002 the Defendant shall deliver to the Plaintiff in the presence of the Catawba County Sheriff without damage air compressor, tool box and tools, space heater and tank, metal desk, air rifle and scope, entertainment center, computer desk, 35" Sony T.V., odds and ends, nuts and bolts;

6. Not later than June 1, 2002 Defendant shall deliver to Plaintiff [the] deed to the rental [home] without any liens or encumbrances;

7. Plaintiff shall deliver to Defendant [a] deed conveying all his interest in the jointly owned house with the Defendant having refinanced or otherwise removed Plaintiff's name from all debts secured by the residence;

8. Simultaneously with the exchange of deeds, the Plaintiff shall pay to Defendant $5,000;

9. A restraining order shall be entered providing that the Plaintiff and Defendant shall not contact each other or otherwise assault, harass, go about, or otherwise interfere with each other;

10. Neither party shall go to the residence of the other without the presence of a law enforcement officer pursuant to the terms of this Order. This shall also apply to both the

place of work and public areas where one or the other may be present;

11. Plaintiff shall pay the April 2002 $441.00 home equity payment on the home owned jointly by the parties.

Pursuant to the terms of this agreement, the parties will live in separate homes, have restraining orders against one another for their protection, and have terminated joint debts. Such an agreement is permissible under Chapter 50B because it was a consent agreement entered into by the parties "to bring about a cessation of acts of domestic violence." *See* N.C. Gen. Stat. § 50B-3(a). Therefore, the provision in the consent order dismissing the parties respective claims for domestic violence protective orders did not divest the trial court of jurisdiction to approve the consent agreement.

Furthermore, I disagree with the majority's conclusion that "the court's authority to enter a protective order or approve a consent agreement is dependent upon finding that an act of domestic violence occurred . . ." None of the cases cited by the majority in support of this statement address consent agreements resolving mutual claims for domestic violence protective orders. *See Brandon v. Brandon,* 132 N.C. App. 646, 513 S.E.2d 589 (1999); *Augur v. Augur,* 356 N.C. 582, 573 S.E.2d 125 (2002); *Story v. Story,* 57 N.C. App. 509, 291 S.E.2d 923 (1982). As stated in *Buckingham v. Buckingham,* 134 N.C. App. 82, 89, 516 S.E.2d 869, 875 (1999), "a consent judgment is merely a recital of the parties agreement and not an adjudication of rights. This type of judgment does not contain findings of fact and conclusions of law because the judge merely sanctions the agreement of the parties." Accordingly, the validity of a consent agreement resolving mutual claims for a domestic violence protective order under Chapter 50B is not dependent upon the trial court finding an act of domestic violence occurred.

Moreover, it should be pointed out that while the majority consolidates the two appeals made by Ms. Williams, only her appeal from the trial court's denial of her Rule 60(b) motion (COA02-1586) is properly before us. As to the other appeal (02-1431), Ms. Williams attempts to appeal from the trial court's order approving the consent agreement without having filed a notice of appeal during the appropriate time period.

The procedural history of this case shows the following chronology:

4 April 2002: Ms. Williams files Complaint and Motion for an Ex Parte Domestic Violence Protective Order; Order entered.

9 April 2002: Mr. Bryant files Complaint and Motion for an Ex Parte Domestic Violence Protective Order; Order denied.

22 April 2002: Both parties inform the trial court that all issues in controversy have been resolved by the parties pursuant to the terms of the Memorandum of Judgment/Order. Ms. Williams, her attorney, and the Court sign the Memorandum of Judgment. The Memorandum of Judgment is filed with the clerk of court.

29 April 2002: Mr. Bryant and his attorney sign the Memorandum of Judgment.

8 May 2002: Ms. Willams files a Rule 60B motion.

21 June 2002: Trial court enters an order incorporating the terms of the Memorandum of Judgment, stating the agreement is enforceable by the trial court's contempt powers and indicating that this Order constitutes a formal judgment.

21 July 2002: Ms. Williams files Notice of Appeal from the 21 June 2002 Order.

26 July 2002: Trial court enters order denying Rule 60B motion.

19 August 2002: Ms. Williams files Notice of Appeal from the 26 July 2002 order.

While the record shows that the parties stipulated and agreed that Ms. Williams gave timely Notice of Appeal from the Order filed 21 June 2002, the facts show that the trial court entered the order on 22 April 2002. Indeed, that order was a valid order because it was "reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (2001); *See In re Estate of Trull,* 86 N.C. App. 361, 357 S.E.2d 437 (1987). Typically, a Chapter 50B consent order is entered and filed in handwritten form, as with the 22 April 2002 order here, and then is typed and entered *nunc pro tunc* to the date of the original order and filed. However, in this case, the 21 June 2002 order was not entered *nunc pro tunc*; instead, it recapitulated the April order. Thus, the record shows that the trial judge entered the order regarding the distribution of the parties property on 22 April 2002. Since Ms. Williams did not appeal from the 22 April order, this Court did not acquire jurisdiction to consider the issue decided by the majority. *See* N.C.R. App. P. 3 (2001); *see also*

## BRYANT v. WILLIAMS

*Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990) (stating "proper notice of appeal requires that a party shall designate the judgment or order from which appeal is taken. Without proper notice of appeal, this Court acquires no jurisdiction. A court may not waive the jurisdictional requirements of . . . Rules 3 and 4, even for good cause shown under Rule 2, if it finds that they have not been met"). Accordingly, I would dismiss Ms. Williams appeal from the 21 June 2002 order. However, Ms. Williams' appeal from Order denying her Rule 60B motion is properly before this Court.

Regarding Ms. Williams' appeal in COA02-1586, the sole issue presented by Ms. Williams in her brief is whether the trial court's order is void for want of subject matter jurisdiction. Ms. Williams contends the district court partitioned the jointly-owned property without subject-matter jurisdiction because Chapter 46 of our statutes vests the superior court with exclusive jurisdiction over the partitioning of property. However, Chapter 46 applies to compulsory or judicial partition, not partition by agreement such as the one in this case. *See Keener v. Den*, 73 N.C. 132 (1875). Moreover, Chapter 46 does not vest the superior court with jurisdiction over the partition of real property unless "one or more persons claiming real estate as joint tenants or tenants in common . . . [seek] partition by petition to the superior court." N.C. Gen. Stat. § 46-3 (2001). Indeed, N.C. Gen. Stat. § 46-1 states that "partition under this Chapter shall be by special proceeding," and according to N.C. Gen. Stat. § 1-393 *et seq.*, the Clerk of Court has jurisdiction over special proceedings. *See Baggett v. Jackson*, 160 N.C. 26, 76 S.E.86 (1912) (explaining the superior court acquires jurisdiction over proceedings to partition lands upon their being transferred by the clerk thereto, in terms, and may proceed therewith and fully determine all matters in controversy). Thus, the trial court had subject-matter jurisdiction.

However, the consent order must be deemed void as it failed to comply with the requirements of N.C. Gen. Stat. § 50B-3(b). Under this provision, "Protective orders entered or consent orders approved pursuant to [Chapter 50B] shall be for a fixed period of time not to exceed one year." In this case, the consent order did not provide for the one-year limitation.

Nevertheless, the record shows the parties in this case reached an agreement to divide their properties and then sought to have the trial court approve that agreement as a consent order under Chapter 50B. As indicated in the record, the trial court entered a memorandum of judgment on 22 April 2002, which indicated the parties had

reached an agreement and agreed to be legally and mutually bound by the terms and conditions. In that light, as stated by the majority, the subject agreement while not enforceable as a consent judgment under N.C. Gen. Stat. § 50B-3, may still be enforceable under contract law. *See Harborgate Property Owners Ass'n v. Mountain Lake Shores Development Corp.*, 145 N.C. App. 290, 297, 551 S.E.2d 207, 212 (2001) (stating "ordinarily, a consent judgment is the contract between the parties entered upon the records with the approval and sanction of the court and it is construed as any other contract").