RONALD JOSEPH TEVEPAUGH, Plaintiff v. ANGELA JONES TEVEPAUGH, Defendant

No. COA98-1472

(Filed 2 November 1999)

**Child Support, Custody, and Visitation— joint custody agreement—consent judgment—terms not followed—vacated and remanded**

The trial court's order denying defendant-mother's motion to vacate the parties' joint custody agreement is reversed and remanded because although there is no legal requirement on the day the consent judgment is signed and entered by the trial court that the parties must acknowledge their continuing consent to the agreement or that the trial court must review the terms of the agreement with the parties, both actions were required in this case since the agreement specifically provided that both would occur.

Appeal by defendant from order dated 31 August 1998 by Judge Michael E. Helms in Wilkes County District Court. Heard in the Court of Appeals 9 September 1999.

*Willardson, Lipscomb & Beal, L.L.P., by John S. Willardson, for plaintiff-appellee.*

*Peebles & Schramm, by John J. Schramm, Jr., for defendant-appellant.*

GREENE, Judge.

Angela Jones Tevepaugh (Defendant) appeals a 31 August 1998 order denying her motion to vacate an 8 April 1998 Memorandum of Judgment/Order (the Agreement) awarding Defendant and Ronald Joseph Tevepaugh (Plaintiff) (collectively, the parties) joint custody of their twin daughters, Kimberly Anne and Katherine Lynn (the children).

Plaintiff and Defendant were married on 15 April 1989, and the children were born of the marriage on 20 February 1993. The parties separated on 8 February 1997. On 17 February 1997, Plaintiff filed a complaint requesting divorce from bed and board, custody of the children, child support, and attorney's fees. Defendant filed a counterclaim requesting, in pertinent part, divorce from bed and board, custody of the children, and child support.

The trial court heard Plaintiff's complaint and Defendant's counterclaim on 11 March 1997, and found it in the best interests of the children that the parties undergo psychological examinations prior to entry of a final custody order and have joint custody of the children pending entry of a final custody order.

On 7 April 1998, the trial court heard testimony regarding custody of the parties' children. Then, subsequent to the hearing, the parties and their attorneys signed the Agreement[1] providing for joint legal and physical custody of the children and containing child support provisions.

The Agreement stated: "With the signing of this [Agreement] by the presiding judge, this [Agreement] shall become a judgment/order of the court and shall be deemed entered pursuant to Rule 58 of the North Carolina Rules of Civil Procedure on the date filed with the Clerk." The Agreement also contained the following provision:

Prior to accepting the stipulated agreement of the parties, the undersigned judge read the terms of the above stipulations and agreements to the parties, and made careful inquiry of them with regards to the voluntary nature of their agreement and their understanding thereof. The court explained to the parties the legal effect of their stipulations and agreements and determined that the parties understood the legal effect and terms of the agreement and stipulations. The parties acknowledged their voluntary execution of the agreements and stipulations, stated that the terms accurately reflected their agreement, and agreed of their own free wills to abide by them.

The trial judge signed the Agreement and, on 8 April 1998, it was filed with the clerk of court.

On 5 June 1998, Defendant brought a motion to vacate the Agreement on the ground that "[a]t the time the [Agreement] was signed by the parties, the terms and conditions of the same were not fully explained to [Defendant] and, as a result, she did not understand the full consequences of the [Agreement]." Defendant also requested a hearing on the issues of child custody, visitation, and support.

On 7 July 1998, the trial court conducted a hearing on Defendant's motion. Defendant testified at the hearing that when she mentioned some concerns about the Agreement to her attorney prior to signing

---

1. The Agreement was entered on Administrative Office of Court (AOC) form AOC-CV-220.

it her attorney responded, "Don't worry about it; we're negotiating. We'll go back later to our offices and we'll add some things and type this up and we'll both get together and see if we agree on the stipulation, the [A]greement, and a final copy will be signed and filed in the courts." Although her attorney went over the provisions of the Agreement with her, she believed, based on what her attorney had advised, that the Agreement was not a "final document." Defendant also stated the trial judge did not review the Agreement with the parties, and the trial judge similarly stated he was "convinced at this time that [he] probably did not come in and go over [the Agreement] with [the parties]."

On 31 August 1998, the trial court made the following pertinent finding of fact:

6. . . . . Plaintiff [sic] testified that she understood the contents of the [Agreement] but did not understand its finality and particularly did not understand that the joint custody arrangement would remain in effect indefinitely pursuant to [the Agreement]. She also testified that she was unable to read all of the handwriting of her former attorney, Dennis R. Joyce, who actually hand printed the [Agreement]. Nevertheless, . . . [P]laintiff [sic] acknowledged that it was her signature appearing thereon.

. . . .

8. . . . . Plaintiff [sic] and her father testified that the Court did not read the [Agreement] to the parties in open court, ask the parties if they understood the [Agreement], etc. This Court has no independent recollection of whether it did or did not do so but for purposes of this hearing, will assume that it did not do so . . . .

. . . .

10. Defendant testified that her attorney discussed with her all terms and provisions of the [Agreement] and that she signed it but did not understand the finality of the provisions relating to child custody, visitation, etc., and thought that those matters would be resolved in a separate, typewritten document.

The trial court further made the following conclusions:

1. . . . [P]laintiff [sic] understood, or reasonably should have understood, the terms and provisions of the [Agreement] which

were negotiated over a period of hours and she executed the [Agreement] freely and voluntarily . . . .

2. . . . [W]hether this Court did or did not [read the Agreement to the parties in open court, ask them if they understood the Agreement, etc.] is not controlling since the parties freely and voluntarily executed [the Agreement] resolving the issues described therein.

3. The [Agreement] is enforceable as an order of this Court and is fully binding upon the parties.

The sole issue on appeal is whether the Agreement, signed by Plaintiff, Defendant, and the trial court, and filed with the clerk of court, should be vacated because the trial court did not read its terms to the parties and inquire into the parties' understanding of the terms and voluntary consent to the terms.

"The power of the court to sign a consent judgment depends upon the unqualified consent of the parties thereto, and the judgment is void if such consent does not exist at the time the court sanctions or approves the agreement . . . and promulgates it as a judgment." *Ledford v. Ledford*, 229 N.C. 373, 376, 49 S.E.2d 794, 796 (1948); *see Buckingham v. Buckingham*, 134 N.C. App. 82, 87, 516 S.E.2d 869, 873-74 (1999) (consent decree relating to child custody valid where parties signed written agreement and appeared in open court to acknowledge their consent). There is no requirement with consent judgments, including consent judgments relating to property, support and custody rights of married persons, that the parties, at the time of the entry of the judgment, actually appear in court and acknowledge to the court their continuing consent to the entry of the consent judgment.[2] *Wachovia Bank v. Bounous*, 53 N.C. App. 700, 706, 281 S.E.2d 712, 715 (1981) (where parties do not appear in court, trial court may sign and enter judgment if it contains the signatures of all the parties); N.C.G.S. § 52-10(c) (1991) (consent judgments do not have to be

2. There is also no requirement, as a precondition to the execution of a consent judgment by the trial court, that it review the terms of a written and signed agreement with the parties, explain the legal effect of such agreement and/or determine if the written terms accurately reflect the agreement. *Thacker v. Thacker*, 107 N.C. App. 479, 483, 420 S.E.2d 479, 481, *disc. review denied*, 332 N.C. 672, 424 S.E.2d 407 (1992); *see Wachovia Bank v. Bounous*, 53 N.C. App. 700, 706, 281 S.E.2d 712, 715 (1981). Of course, oral agreements and oral stipulations cannot support the entry of a consent decree unless the trial court complies with the teachings of *McIntosh*. *McIntosh v. McIntosh*, 74 N.C. App. 554, 556, 328 S.E.2d 600, 602 (1985) (court must make "inquiries of the parties").

TEVEPAUGH v. TEVEPAUGH

[135 N.C. App. 489 (1999)]

acknowledged); N.C.G.S. § 52-10.1 (1991). The parties' failure, however, to acknowledge their continuing consent to the proposed judgment, before the judge who is to sign the consent judgment, subjects the judgment to being set aside on the ground the consent of the parties was not subsisting at the time of its entry.[3] *Ledford,* 229 N.C. at 376, 49 S.E.2d at 796; N.C.G.S. § 1A-1, Rule 60(b)(4) (1990).

In this case, the parties and the trial court signed the Agreement relating to child custody and support. The record does not reveal when the parties or the trial court signed the Agreement. Although there is no legal requirement that the parties acknowledge to the trial court, on the day the consent judgment is signed and entered by the trial court, their continuing consent to the Agreement or that the court review the terms of the Agreement with the parties, both actions were required in this case because the Agreement specifically provided that they would occur.[4] The Agreement was not to become a judgment *until* it was signed by the presiding judge and the judge was not to sign it *until* he had reviewed it with the parties and each of them had acknowledged they understood the legal effect of the Agreement. The evidence, as found by the trial court, reveals the trial court did not review the Agreement with the parties and for this reason the trial court should not have signed the Agreement. It follows the Agreement must be vacated.[5] The order of the trial court denying Defendant's motion to vacate the Agreement must therefore be reversed and remanded.

3. To avoid this possibility, the trial court could require the parties to appear before it and acknowledge their consent at the time it signs and enters the consent judgment. Although this would appear to be the better practice, it may be the large number of consent judgments presented to the trial court make it impracticable.

4. We acknowledge that the Agreement used in this case was a form provided by AOC and not one prepared by the parties. Forms are useful in that they facilitate the flow of cases through our court system and their use is encouraged. When forms are used, however, the parties and the trial court have an affirmative obligation to be aware of and comply with all the provisions contained in the forms. If a particular provision is not deemed to be applicable, its deletion should be clearly noted and initialed by each of the parties.

5. Furthermore, the conclusion of the trial court that Defendant "understood, or reasonably should have understood, the terms and provisions" of the Agreement is simply not supported by the findings of fact or the evidence in this record. The trial court found that Defendant "did not understand the finality of the provisions [of the Agreement] relating to child custody, visitation, etc., and thought that those matters would be resolved in a separate, typewritten document." This finding is supported by Defendant's testimony that she mentioned her concerns about the Agreement to her attorney and was told that negotiations were continuing and that after we "go back later to our offices . . . we'll add some things . . . and a final copy will be signed and filed in the courts."

Reversed and remanded.

Judges TIMMONS-GOODSON and HORTON concur.