MELANIE C. MILLER (NOW SIKES), PLAINTIFF v. TIMOTHY RAY MILLER, DEFENDANT

No. COA00-823

No. COA00-945

(Filed 17 September 2002)

**1. Child Support, Custody, and Visitation— support— unsigned consent order—prior signed memorandum of judgment—support not calculated**

The trial court did not err in setting defendant's child support pursuant to a consent order that was not signed by defendant or his attorney where defendant had signed a prior memorandum of judgment which stated that the signatures of the parties on the formal judgment were not necessary. The prior memorandum of judgment settled the question of custody and provided that support was to be calculated according to the guidelines, but that amount had not been determined when the matter was heard for final judgment. A hearing was held and competent evidence was presented which supported the judge's use of the worksheets and his findings.

**2. Child Support, Custody, and Visitation— support—modification of temporary order—effective date of guidelines amount**

The trial court properly followed the law in its 22 December 1999 order modifying a temporary child support order and did not abuse its discretion in setting 17 July 1998 as the effective date of increased child support pursuant to the child support guidelines where the temporary order provided for a certain amount of support to be paid until custody could be decided; the temporary order was terminated when the parties settled the issue of custody in a memorandum of judgment filed on 17 July 1988 which provided that child support was to be calculated pursuant to the child support guidelines; and the trial court held a hearing, determined that defendant father should pay a certain amount per week in child support under the guidelines, and set the date the memorandum of judgment was filed as the effective date of the guidelines amount of child support, with defendant being given credit for the payments made under the temporary order.

MILLER v. MILLER

[153 N.C. App. 40 (2002)]

3. **Child Support, Custody, and Visitation— support—contempt—findings supporting willfulness**

The evidence fully supports the trial court's findings and conclusion that defendant was in willful contempt of a child support order where the court found that defendant had not made some payments, that defendant had and has the means to comply, and that defendant had presented no evidence as to why he should not be held in contempt.

4. **Child Support, Custody, and Visitation— support—gainful employment ordered**

A trial court did not err by ordering the defendant in a child custody action to remain gainfully employed where defendant requested that the child support payments be withheld from his wages.

Judge GREENE concurring in part and dissenting in part.

Appeal by defendant from judgment entered 22 December 1999 by Judge Mark S. Culler, and judgment entered 24 April 2000 by Judge Martin J. Gottholm in Davidson County District Court. Appeal by plaintiff from order of 16 November 1998. Plaintiff's appeal was dismissed on 2 October 2000 for failure to comply with Appellate Rule 12(b). The appeals were consolidated for hearing and are consolidated for purposes of this opinion. Heard in the Court of Appeals 14 August 2001.

*No brief filed for the plaintiff-appellee.*

*C. Richard Tate, Jr. for defendant-appellant.*

CAMPBELL, Judge.

Defendant appeals from two judgments of the trial court. COA00-823 is an appeal from the 22 December 1999 order for child support and counsel fees. COA00-945 is an appeal from the 24 April 2000 order finding defendant in contempt for not paying back child support in violation of the 22 December 1999 order. These appeals were consolidated for hearing.

## COA00-823

As this appeal from the 22 December 1999 order is the last in a series of orders setting child custody and child support, it is necessary to set out the procedural history of this case so as to provide a clear understanding of defendant's argument.

**MILLER v. MILLER**

[153 N.C. App. 40 (2002)]

Plaintiff and defendant were granted an absolute divorce on 24 April 1995. They had one child born of the marriage, Tyler Ray Miller, born 17 November 1989. On 24 February 1997, Judge Kimberly S. Taylor ("Judge Taylor") of the Davidson County District Court, issued an order for temporary child support. In her order, Judge Taylor stated: "no order has ever been entered regarding the custody of Tyler Ray Miller and an action is pending in Guilford County wherein defendant claims custody is to [be] determined." Judge Taylor went on to find the relative earnings of the parties, and using Worksheet A of the North Carolina Child Support Guidelines (which is used when the child is in the sole custody of one parent, here the plaintiff), determined that defendant should pay $124.00 per week in child support. In her order, Judge Taylor specifically stated that "[d]efendant shall pay $124.00 per week to the Plaintiff for the support and maintenance of Tyler Ray Miller as temporary child support until the custody of said child is determined in Guilford County." The action for child custody and child support that was pending in Guilford County was transferred to Davidson County, where, by agreement of the parties, it was then scheduled for court ordered mediation with R.B. Smith as the mediator.

The mediation conference was held on 7 July 1998. The mediator's report indicated that the parties had reached an agreement on all issues, and that a consent judgment was to be filed in the matter. The agreement reached by the parties during the mediation was embodied in a document entitled "Memorandum of Judgment/Order," also dated 7 July 1998, and set out the terms of custody agreement, granting each party joint custody and setting the schedule for when Tyler would be with each parent. In addition, there was a provision in paragraph 1, sub-paragraph (8) of the agreement which provided that the parties agreed that: "Child support to be calculated pursuant to child support guidelines." The agreement contained the following relevant stipulations, as set forth in paragraph 3 of AOC Form 220:

(a) With the signing of this Memorandum by the presiding judge, this Memorandum shall become a judgment/order of the court and shall be deemed entered pursuant to Rule 58 of the North Carolina Rules of Civil Procedure on the date filed with the Clerk;

(b) the provisions of this Memorandum are fair and reasonable and each party has had ample opportunity to obtain legal advice concerning the legal effect and terms of this Memorandum;

MILLER v. MILLER

[153 N.C. App. 40 (2002)]

(c) this Memorandum is enforceable by the contempt powers of the court should any party not comply with its terms; [and]

. . . .

(f) signatures of the parties on the formal judgment/order are not necessary[.]

This agreement was signed by both plaintiff and defendant and their respective counsel. Both parties then acknowledged that they had read the agreement and stipulations, that they entered into the agreement voluntarily, and that they understood the legal effect of this agreement. The agreement was then signed by Judge Jack E. Klass ("Judge Klass") of the Davidson County District Court, and was filed on 17 July 1998.

Plaintiff's attorney subsequently drew up a proposed, formal consent order incorporating the custody provisions agreed to in the mediation. The issue of child support payments was left open as information regarding defendant's earnings was needed to complete the calculations. The proposed order and a request for defendant's financial information were mailed to defendant's attorney on or about 31 July 1998. There is nothing in the record to indicate that plaintiff's attorney received a response to the proposed order or to his request for defendant's financial information.

Plaintiff's attorney then issued a subpoena to defendant's employer to obtain defendant's wage information. After receiving this information, plaintiff's attorney drew up a revised formal consent order which included the calculations for child support pursuant to the child support guidelines. According to these calculations, defendant's child support payment was to be $170.00 per week.

Finally, after receiving no response to the revised order, plaintiff's attorney presented the revised order to the court with a request that the judge sign the order based on the Memorandum of Judgment/Order which had been filed 17 July 1998. On 10 September 1998, Judge James M. Honeycutt ("Judge Honeycutt") signed the revised consent order, but in response to a request from counsel for defendant, plaintiff's attorney delayed filing the revised agreement until defendant's counsel had an opportunity to review it. On 25 September 1998, having heard nothing further from defendant's counsel, plaintiff's attorney filed the revised order.

On 9 October 1998, defendant filed a motion to have the revised consent order set aside since the language of the order recited "and it appearing to the court from the signatures of the parties and their respective counsel subscribed below that the parties have reached an agreement at mediation on the matters [in] controversy and, with the consent of the parties," and that neither defendant nor his attorney had consented to the entry or filing of the order. Judge Honeycutt granted this motion with regard to the child support provisions in the order, but refused to set aside the provisions for child custody. Defendant then gave notice of appeal to this Court regarding the order, however, we held the appeal was interlocutory.

The final judgment regarding these issues, and the order from which defendant now appeals, was issued on 22 December 1999, by Judge Mark S. Culler ("Judge Culler"). Judge Culler held a hearing on the matter, wherein plaintiff testified and presented evidence of the parties' earnings, plaintiff's expenses, and the child's reasonable expenses (including medical and dental insurance).

After recounting the history of these proceedings in his order, Judge Culler made findings regarding the earnings and expenses of the parties. He also found that neither party had filed a motion to modify child support, and that the plaintiff was "still pursuing calculation of the child support based on the Child Support Guidelines effective as of the memorandum of judgment." In addition, Judge Culler found that defendant was continuing to make payments of $124.00 per week as required by the temporary child support order issued by Judge Taylor.

In his conclusions of law, Judge Culler stated that plaintiff was entitled to child support as calculated by the guidelines, and ordered defendant to pay $162.00 per week in child support. This figure was calculated by taking the figures presented at the hearing and by using Worksheet A from the child support guidelines, which indicated that defendant's support payment would be $701.99 per month. Judge Culler then took the $701.99 per month figure, multiplied it by twelve months, and then divided that number by 52 weeks to obtain the $162.00 weekly child support payment owed by defendant. However, in addition to setting defendant's existing child support payment at $162.00 per week, Judge Culler set the effective date as 17 July 1998— the filing date of the Memorandum of Judgment/Order. After giving defendant credit for the $124.00 per week payments he had made from 17 July 1998 to 22 December 1999, defendant was found to be approximately $4,148.00 in arrears.

MILLER v. MILLER

[153 N.C. App. 40 (2002)]

**[1]** Although defendant lists thirty-eight separate assignments of error, all of these essentially constitute a single issue: whether under the 22 December 1999 order, the trial judge erred in setting defendant's child support payment at $162.00 per week.

Defendant contends that the "consent order" signed by Judge Honeycutt on 10 September 1998 was not signed by either defendant or his attorney, it lacked the necessary consent needed for a binding agreement (thereby making it void), and that for this reason, it should have been set aside in its entirety, leaving Judge Taylor's temporary child support order as the only order still in effect. Following this reasoning, and taking into consideration the fact that neither party filed a motion for a modification of child support, defendant concludes it was error for Judge Culler to hear evidence on the matter, and issue an order increasing defendant's child support and making the payments retroactive.

However, defendant ignores one crucial fact. Whereas we would agree with defendant that ordinarily "[a] consent judgment rendered without the consent of a party will be held inoperative in its entirety," *Overton v. Overton*, 259 N.C. 31, 37, 129 S.E.2d 593, 598 (1963), defendant's failure to sign the revised, formal consent order drafted by plaintiff's attorney and signed by Judge Honeycutt, does not obviate the fact that defendant did sign the Memorandum of Judgment/Order ("Memorandum") signed by Judge Klass. By signing the Memorandum, defendant agreed to all of the custody provisions which were then incorporated into the revised, formal consent order signed by Judge Honeycutt, as well as the provision in the Memorandum where defendant agreed that child support would be determined according to the child support guidelines.

Furthermore, the Memorandum stated that when signed by the presiding judge, it became an order of the court, and that the "*signatures of the parties on the formal judgment/order are not necessary.*" (Emphasis added.) Therefore, defendant had already consented to the custody portion of the order by virtue of consenting to the Memorandum.

This is not the case as to the portion of Judge Honeycutt's order requiring that defendant pay $170.00 per week in child support. Since defendant did not sign, and therefore did not consent to, the $170.00 per week child support payment stated in the revised, formal consent agreement signed by Judge Honeycutt, he was not bound by this provision. Furthermore, as no payment had been officially calculated in

the Memorandum of Judgment/Order, the only provision for child support in effect at the time was Judge Taylor's temporary support order requiring defendant pay $124.00 per week.

As pointed out above, however, Judge Taylor's order specifically stated that it was to remain in effect *until the custody of the child was determined.* (Emphasis supplied). Thus, when Judge Klass (based on defendant's consent) signed the Memorandum of Judgment/Order finally deciding the custody issue, it replaced Judge Taylor's temporary order as to custody.

Having resolved the issue of custody, the issue of child support remained to be decided. Under the provisions of the Memorandum, child support was to be calculated according to the child support guidelines, but no determination had been made. Therefore, when the matter came before Judge Culler, it was his duty to hear evidence on the issue, and to make a determination as to the amount of the child support. *See Crutchley v. Crutchley,* 306 N.C. 518, 524-25, 293 S.E.2d 793, 797-98 (1982). At the hearing on the matter of child support, there was evidence as to the parties' incomes, the expenses for the child, and plaintiff's expenses. Evidence of defendant's income was admitted in the form of a letter from defendant's employer, stating defendant's earnings, along with the cost of insurance for himself and the child. Judge Culler also heard testimony from plaintiff who stated that although the parties shared custody of the child, under their Memorandum of Judgment/Order, defendant had the child for fewer than 123 days out of the year.

Under the North Carolina Child Support Guidelines, three different worksheets are used in determining the amount of child support to be paid by each party. Worksheet A, entitled "Sole Custody," is to be used "when the obligee [plaintiff here] has physical custody of the child(ren) who are involved in the pending action for a period of time that is more than two-thirds of the year (more than 243 days per year)." N.C. Child Support Guidelines, 2001 Ann. R. N.C. 33, 47. Worksheet B, entitled "Joint or Shared Physical Custody," is to be used "when the parents share joint *physical* custody of the child(ren) for whom support is sought," and is limited to use where each parent has custody for more than one-third of the year, or in terms of days, where each parent has custody for more than 122 overnights per year. *Id.* at 49. Worksheet C, entitled "Split Custody," involves the situation where there is more than one child involved, and each parent has physical custody of at least one child. *Id.* at 51.

Therefore, in determining the amount of child support owed by defendant, the trial court was correct in using Worksheet A, since according to the evidence presented, defendant had physical custody of the child.fewer than 123 days per year. Once child support is set in accordance with these worksheet guidelines, it "is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support." *Buncombe County ex rel Blair v. Jackson,* 138 N.C. App. 284, 287, 31 S.E.2d 240, 243 (2000). This Court's review is limited to a consideration of whether there is sufficient competent evidence to support the findings of fact, and whether, based on these findings, the Court properly computed the child support obligations. *Hodges v. Hodges,* 147 N.C. App. 478, 482, 556 S.E.2d 7, 10 (2001). We conclude that there was competent evidence to support Judge Culler's findings.

[2] Defendant next contends that Judge Culler erred in awarding plaintiff a retroactive increase in the amount of child support payments by setting 17 July 1998 as the effective date of the application of the guidelines amount of child support. We disagree.

Retroactive child support consists either of "(1) child support awarded prior to the date a party files a complaint therefor, or (2) a retroactive increase in the amount provided in an existing support order." *Cole v. Cole,* 149 N.C. App. 427, 433, 562 S.E.2d 11, 14 (2002). As child support was not awarded prior to the date plaintiff filed her complaint, the present case deals only with the retroactive increase from the $124.00 child support payments ordered by Judge Taylor on 24 February 1997 to the $162.00 child support payments ordered by Judge Culler on 22 December 1999, which were held to be effective as of 17 July 1998.

Pursuant to N.C. Gen. Stat. 50-13.7(a), an "order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested subject to the limitations of G.S. 50-13.10." Accordingly, a court does not have the authority to *sua sponte* modify an existing support order. *See Royall v. Sawyer,* 120 N.C. App. 880, 463 S.E.2d 578 (1995). In addition, "[m]odification of a support order cannot occur until the threshold issue of substantial change in circumstances has been shown." *Davis v. Risley,* 104 N.C. App. 798, 800, 411 S.E.2d 171, 173 (1991).

However, our Supreme Court has held that a district court may enter an interim order for child support which contemplates a per-

manent retroactive order will be entered at a later time and may require larger child support payments than required by the interim order. *Sikes v. Sikes*, 330 N.C. 595, 411 S.E.2d 588 (1992). The Court went further to hold that since no final determination had been made regarding the proper amount of child support, the child support order was temporary and was subsequently subject to modification. Finally, the Court held that the requisite showing of changed circumstances as set forth by *Ellenberger v. Ellenberger*, 63 N.C. App. 721, 306 S.E.2d 190, *rev'd on other grounds*, 309 N.C. 631, 308 S.E.2d 714 (1983), is not applicable until there is a determination of child support based upon the merits of the case. *Id.* at 599, 411 S.E.2d at 590.

In the case at bar, the order entered by Judge Taylor setting child support payments at $124.00 was temporary in nature. The language of the order identified it as a "temporary support order" and provided that the sum of $124.00 per week "should be paid as temporary child support until the custody of [Tyler Ray Miller] is heard and determined." It is evident from this language that the order was intended to be temporary. That is, rather than being a final determination as to the issue of child support, the order provided for a sum certain amount of support to be paid until custody could be decided. It is clear that Judge Taylor was contemplating the subsequent modification of child support, as the order provided that "[a]fter the custody of Tyler Ray Miller is heard and decided, if the parties cannot agree on child support in that action or if the Court does not decide on child support in that action, then in that event, either party shall have the right to seek modification of this order thereafter." The temporary nature of the order thus rendered it subject to subsequent modification by the court.

Furthermore, our Court has previously held that child support which is awarded "from the time a party files a complaint for child support to the date of trial is not 'retroactive child support,' but is in the nature of prospective child support representing that period from the time a complaint seeking child support is filed to the date of trial." *Taylor v. Taylor*, 118 N.C. App. 356, 361, 455 S.E.2d 442, 446 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996). In the present case, the temporary child support order was terminated when the parties settled the issue of custody in the Memorandum of Judgment/Order filed 17 July 1998. Since the Memorandum failed to determine a sum certain amount of child support, the matter came before Judge Culler, who determined that under the guidelines

defendant owed $162.00 per week in child support. In setting 17 July 1998 as the effective date of the application of the guidelines amount of child support, Judge Culler was ordering prospective support, as the time period in question fell between the date plaintiff filed her complaint and the date of the hearing on the final determination of child support. Further, the judge credited defendant's payments of $124.00 per week from 17 July 1998 to 22 December 1999, against the $162.00 payment that should have been made during that period of time. We therefore conclude that the trial judge properly followed the law in modifying the temporary order for child support, and that he did not abuse his discretion in setting the effective date of the child support payments.

## COA00-945

[3] In this appeal, defendant Timothy Ray Miller, appeals from judgment entered 24 April 2000, finding him in contempt for failure to pay child support as ordered by Judge Culler in the 22 December 1999 judgment.

Defendant first argues that since we should find the order appealed from in COA00-823 void (the 22 December 1999 order), we should accordingly find that the 24 April 2000 order finding him in contempt to be void. However, having found the prior order to be valid, we reject this contention.

Next, defendant asserts that the trial court did not make the findings of fact required by N.C. Gen. Stat. § 5A-23(e) (2001), entitled "Proceedings for civil contempt." N.C. Gen. Stat. § 5A-23 (e) reads in pertinent part: "[a]t the conclusion of the hearing, the judicial official must enter a finding for or against the alleged contemnor on each of the elements set out in G.S. 5A-21(a)." N.C. Gen. Stat. § 5A-21(a) (2001), in turn reads:

(a) Failure to comply with an order of a court is a continuing civil contempt as long as:

(1) The order remains in force;

(2) The purpose of the order may still be served by compliance with the order;

(2a) The noncompliance by the person to whom the order is directed is willful; and

(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

Specifically, defendant argues that the trial court made no findings that defendant's conduct was "willful." In order to find that a defendant acted willfully, "the court must find not only failure to comply but that the defendant presently possesses the means to comply." *Teachey v. Teachey*, 46 N.C. App. 332, 334, 264 S.E.2d 786, 787 (1980) (quoting *Mauney v. Mauney*, 268 N.C. 254, 269, 150 S.E.2d 391, 394 (1966)). The standard of review we follow in a contempt proceeding is "limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997).

Here, the trial court found that defendant was paying the $162.00 per week payment pursuant to the 22 December 1999 order, but that no payment had been made toward what the parties stipulated was the $3,108.00 in child support that would be owed from 17 July 1998 to 22 December 1999. Further, the trial court found that "defendant has had and presently has the means and ability to comply with the December 22, 1999 order." Defendant himself asked in open court that the trial court enter an order withholding the $162.00 per week child support from his wages. In addition, the trial court found "defendant presented no evidence as to why he should not be held in wilful [sic] contempt of court."

Based on the evidence and the trial court's findings, we conclude the record fully supports these findings and the trial court's conclusion that defendant was in willful contempt of the 22 December 1999 order.

We also find no merit in defendant's argument that the trial court's contempt order was unsupported by the evidence. The record is replete with evidence of defendant's income, his knowledge of the 22 December order, and his failure to comply with the portion of the child support order requiring defendant to pay $162.00 for the time period covering 17 July 1998 to 22 December 1999. This evidence fully supports the trial court's findings of fact and conclusions of law drawn therefrom, finding defendant in willful contempt.

[4] Defendant's final contention is that the trial court erred by ordering defendant to remain gainfully employed. Defendant argues that

"[f]or a parent who has been and is paying child support pursuant to our child support Guidelines or pursuant to an agreement or court order each week it is obviously none of the court's business whether or not such a parent is employed." Defendant contends the trial court does not have the authority to issue such an order. We disagree.

N.C. Gen. Stat. § 50-13.4(d1) (2001), specifically states that "[f]or child support orders initially entered on or after January 1, 1994, the immediate income withholding provisions of G.S. 110-136.5(c1) shall apply." In regards to immediate income withholding, N.C. Gen. Stat. § 110-136.5(c1) (2001), states that "[i]n non-IV-D cases in which a child support order is initially entered on or after January 1, 1994, an obligor is subject to income withholding immediately upon entry of the order." This is so, unless the trial court finds "good cause" not to require immediate income withholding, or the parties have reached a written agreement for an alternative arrangement. N.C. Gen. Stat. § 110-136.5(c1) (2001). Not only is there no finding of "good cause" which would allow defendant to be free from income withholding, but defendant in open court requested that the child support payments be withheld from his wages. In acceding to defendant's request without defendant making any showing of any other source of income from which these payments could be made, the trial court was within its prerogative to order defendant to remain gainfully employed to ensure payment of his child support obligation.

Affirmed.

Judge BRYANT concurs.

Judge GREENE concurs in the result in part and dissents in part in a separate opinion.

GREENE, Judge, concurring in the result in part and dissenting in part.

I agree with the majority's holding as to the validity of the memorandum of judgment/order (the memorandum) and the subsequent consent order (the formal order) and its decision to affirm Judge Culler's child support order but reach this conclusion using a different analysis. As to the majority's discussion of the trial court's contempt order, I dissent.

I

## *Temporary Order*

In a recent opinion, this Court held that a temporary order for child custody may convert into a final order "when neither party request[s] the calendaring of the matter [addressed in the temporary order] for a hearing within a reasonable time after the entry of the [temporary] [o]rder." *LaValley v. LaValley,* —— N.C. App. ——, ——, 564 S.E.2d 913, 915 (2002). In *LaValley,* this Court deemed the passage of twenty-three months between the entry of the temporary order and the filing of the plaintiff's motion in the cause seeking modification of the prior order unreasonable and concluded the temporary order had converted into a final order requiring the trial court to employ a substantial change of circumstances test. *Id.* at ——, 564 S.E.2d at 915.

In this case, the temporary order was signed by Judge Taylor on 24 February 1997. In May 1998, the parties agreed to a mediated settlement conference on the issues of child custody and child support, and the trial court entered an order to this effect filed 8 May 1998. Subsequent to the mediated settlement conference, the parties and the trial court signed the memorandum, which was filed 17 July 1998. The formal order was filed 25 September 1998 and was followed by Judge Honeycutt's order filed 16 November 1998 granting defendant's Rule 60 motion as to child support and Judge Culler's order filed 22 December 1999 from which defendant appeals. The record thus reflects a reasonable effort by the parties to move the case along and resolve the issues of child custody and child support. Accordingly, the temporary nature of Judge Taylor's order was preserved, obviating the need to make any findings regarding a substantial change of circumstances prior to assessing child support.

II

## *Memorandum Issues*

A

## *Interplay between Memorandum and Formal Order*

The memorandum signed by the parties and the trial court and filed 17 July 1998 contemplated the entry of a subsequent formal order that was to reflect the agreement contained in the memorandum. If such a formal order is identical in its terms and provisions to the memorandum, it is deemed valid. *Buckingham v. Buckingham,*

### MILLER v. MILLER

[153 N.C. App. 40 (2002)]

134 N.C. App. 82, 87-88, 516 S.E.2d 869, 874, *disc. review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999). While the formal order constitutes a valid order, it is, however, "merely surplusage" to the memorandum. *Id.* at 88, 516 S.E.2d at 874. The memorandum is the court document that represents the final judgment on the issues contained therein. *Id.* at 87, 516 S.E.2d at 874. In this case, the formal order was identical to the memorandum in respect to the issue of child custody and therefore valid as to this issue. As the formal order differed from the memorandum in respect to child support, the trial court properly set aside that part of the formal order upon motion by defendant.

### B

### *Consent Requirement*

Defendant argues the memorandum is invalid because the trial court never met with the parties and thus failed to examine the parties as required by *Tevepaugh v. Tevepaugh*, 135 N.C. App. 489, 521 S.E.2d 117 (1999). I disagree.

The memorandum includes a statement, signed by the trial court, attesting the trial court had read the terms of the agreement to the parties, inquired as to the voluntary nature of the parties' agreement and their understanding thereof, and informed the parties of the legal effect of the memorandum. There is no evidence in the record to refute this statement. Accordingly, defendant's argument is without merit.[1]

### III

### *Contempt*

Defendant further contends the trial court failed to make any findings that defendant's conduct was willful.

> In contempt proceedings, the trial court's findings of facts are conclusive on appeal when supported by competent evidence. The element of willfulness is required for a finding of civil contempt . . . . Willfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so.

*Sowers v. Toliver*, 150 N.C. App. 114, 118, 562 S.E.2d 593, 596 (2002).

---

1. The majority further discusses the calculation and the retrospective nature of the child support awarded by Judge Culler. As these issues were not argued in defendant's brief to this Court, I would not address them. *See* N.C.R. App. P. 28(a).

In this case, the trial court found "defendant has had and presently has the means and ability to comply with the [child support] order," but the trial court failed to make a finding as to whether defendant's failure to comply with the order was "deliberate and intentional." The trial court merely found "defendant [had] presented no evidence as to why he should not be held in wil[l]ful contempt of court." For the reasons stated in the dissent in *Shumaker v. Shumaker*, 137 N.C. App. 72, 527 S.E.2d 55 (2000) (Greene, J., dissenting in part), this constituted an improper assignment to defendant of the burden of proof on the issue of willfulness. Instead, it was the trial court's duty to make a finding whether defendant's failure to comply with the order was indeed "deliberate and intentional." Without such an additional finding there is no support for the trial court's conclusion that defendant was in willful contempt. *See Sowers*, 150 N.C. App. at 118, 560 S.E.2d at 596.[2]

In summary, I agree with the majority's decision to affirm (1) Judge Honeycutt's denial of defendant's motion to set aside the formal order as it relates to child custody and (2) Judge Culler's child support order but believe the contempt order must be reversed.

---

2. I would further note the trial court erred in ordering defendant to "remain gainfully employed." It is well established that a person can be found in contempt of a child support order for his failure to pay court-ordered support. *See id.* The trial court, however, cannot dictate the source of the funds from which child support is to be paid.